**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BRIAN DE FALCO, individually and on behalf of a class | ) ) ) | |
| Plaintiff, | ) ) | No. 12 C 7238 |
| v. | ) ) | Judge Virginia M. Kendall |
| VIBRAM USA, INC. and VIBRAM FIVEFINGERS, LLC, | ) ) ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Brian De Falco filed a putative class action complaint against Defendants Vibram USA, Inc. and Vibram FiveFingers, LLC (collectively, the "Defendants") alleging that the Defendants engaged in various deceptive practices in promoting and selling their product: Vibram FiveFingers shoes. Defendants have moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). In the alternative, Defendants move for transfer of the action, pursuant to 28 U.S.C. 1404(a), to the United States District Court for the District of Massachusetts. Plaintiff has moved for the action to be remanded to the Circuit Court of Will County, Illinois because this Court purportedly does not have subject matter jurisdiction. For the reasons set forth below, the motion for remand is denied. The motion to dismiss is granted in part and denied in part. The motion for transfer is granted.[1]

---

[1] The Defendants also requested a stay of this action in the event this Court denied both the motion to dismiss and the motion for transfer. Because this Court grants the motion for transfer, it declines to rule on the request for a stay. That motion is entered and continued and should be decided on by the United States District Court for the District of Massachusetts.

## BACKGROUND

The following facts are taken from Plaintiff's Complaint and are assumed to be true for purposes of the Motion to Dismiss.  *See Voelker v. Porsche Cars North America, Inc.,* 353 F.3d 516, 520 (7th Cir. 2003); *Murphy v. Walker,* 51 F.3d 714, 717 (7th Cir. 1995).  Defendants design, manufacture, market, distribute and sell shoes for men, women and children called Vibram FiveFingers.  (Complaint, ¶ 1.)  These shoes cost between $80 to $135 per pair.  (*Id.* at ¶ 2.)  Defendants began to sell the shoes in the United States in April 2006.  (*Id.* at ¶ 17.)  FiveFingers are "minimalist" shoes, which are intended to mimic barefoot running.  (*Id.* at ¶ 3.)  This style of running has increased in popularity recently.  (*Id.*)  FiveFingers have thin, flexible soles that are contoured to the shape of the human foot which includes visible individual sections for the toes.  (*Id.* at ¶ 18.)

When the Defendants began marketing FiveFingers, they made representations that FiveFingers provide a number of health benefits.  These benefits included claims that FiveFingers improves posture and foot health, reduces risk of injury, strengthens muscles in the feet and lower legs, and promotes spine alignment.  (*Id.* at ¶ 36.)  These representations were made through: (1) point of sale promotions such as in-store displays; (2) on hangtags and brochures accompanying FiveFingers; (3) on Vibram's website; and (4) on the Vibram FiveFingers Facebook page.  (*Id.* at ¶ 23.)  The Defendants also claimed that there was scientific support for their assertions.  (*Id.* at ¶ 35.)  For example, the website, www.vibramfivefingers.com, contained purported testimonials by physicians regarding the health benefits that FiveFingers could confer.  (*Id.*)

Based on these representations, Plaintiff purchased three pairs of FiveFingers in or about December 2011 and April 2012 from a store called Badlands in Naperville, Illinois. (*Id.* at ¶ 12.) Badlands is a FiverFingers distributor. (*Id.*) Plaintiff purchased these shoes for approximately $135 and $110. (*Id.*)[2] However, subsequently, Plaintiff learned that Defendants' representations were false. (*Id.*) The representations are false because there is no adequate scientific proof supporting Defendants' representations. (*Id.* at ¶¶ 40-55.) Specifically, Plaintiff contends that there have been no studies done to determine whether barefoot style running produces the health benefits that Defendants claim it does. (*Id.*) He also cites a number of articles stating that this style of running could increase the risk of injury. (*Id*.) Had Plaintiff known the truth about Defendants' representations, he would not have purchased the FiveFingers shoes. (*Id.* at ¶ 69.)

Prior to filing his lawsuit, two other plaintiffs filed nearly-identical complaints against Vibram based on allegedly deceptive marketing of Vibram's FiveFingers shoes. These other suits bring claims against Vibram under the state laws of Florida, Massachusetts and California.[3]

The first case, *Bezdek v. Vibram USA Inc., et al.,* No. 12 C 10513, was filed in the District of Massachusetts (the "Massachusetts Action"). The Massachusetts Action was brought by a Florida resident purportedly on behalf of a nationwide class of consumers or, alternatively, on behalf of a class of consumers who purchased FiveFingers in Florida. (Doc. 17, Ex. A.) The second case, *Safavi v. Vibram USA Inc., et al.,* No. 12 C 5900, was

---

[2] The Complaint is unclear whether the Plaintiff purchased two pairs for $135 and one pair for $110 or vice-versa.

[3] The Court may properly "take [judicial] notice of proceedings in other court…if the proceedings have a direct relation to matters at issue." *Green v. Warden,* 699 F.2d 364, 369 (7th Cir. 1983) (citing *Barrett v. Baylor,* 457 F.2d 119, 124 n.2 (7th Cir. 1972)). The Massachusetts Action and the California Action have a direct relation to the matters at issue. Accordingly, the Court may take judicial notice of these proceedings.

filed in the United States District Court for the Central District of California on behalf of a putative class of California purchasers of FiveFingers (the "California Action"). (*Id.* at Ex. B.). The District Court in California stayed that case "until a ruling is issued on class certification in the *Bezdek* Action or until a further order of [the California District Court]." (*Id.*)

This case was originally filed on August 13, 2012 in the Circuit Court of the Twelfth Judicial Circuit of Will County, Illinois. (Doc. 1, Ex. A.) The Plaintiff brings this action individually and on behalf of a putative class consisting of Illinois residents who purchased Vibram FiveFingers running shoes from an authorized retailer located in Illinois or online for shipping to an Illinois address. (*Id.*) Shortly after filing his Complaint, Defendant filed a motion for class certification in the Circuit Court of Will County. (*Id.*) The Defendants then removed the case to this Court on September 11, 2012. (Doc. 1.) Shortly thereafter, they filed the instant motion to dismiss or, in the alternative, to transfer the case to the District of Massachusetts. (Doc. 16.) Plaintiff has filed a motion for this case to be remanded to the Circuit Court of Will County. (Doc. 12.)

## **LEGAL STANDARD**

When considering a motion to dismiss under Rule 12(b)(6) the Court accepts as true all of the well-pled facts alleged in the complaint and construes all reasonable inferences in favor of the nonmoving party. *See Killingsworth v. HSBC Bank Nevada, N.A.,* 507 F.3d 614, 619 (7th Cir. 2007) (citing *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006)); *accord Murphy*, 51 F.3d at 717. To state a claim upon which relief can be granted a complaint must contain a "short and plain statement of the claim showing that

the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true . . . state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotations omitted). In analyzing whether a complaint meets this standard the "reviewing court [must] draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678. When the factual allegations are well-pled the Court assumes their veracity and then determines if they plausibly give rise to an entitlement to relief. *See id.* at 679. A claim has facial plausibility when the factual content plead in the complaint allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See id.* at 678.

Claims alleging fraud must satisfy the heightened pleading requirement of Rule 9(b), which requires that "[i]n alleging fraud or mistake, a party must state *with particularity* the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added). Rule 9(b) applies both to common law fraud claims and to claims brought under the Illinois Consumer Fraud and Deceptive Business Practices Act. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011). "While [Rule 9(b)] does not require a plaintiff to plead facts that if true would show that the defendant's alleged misrepresentations were indeed false, it does require the plaintiff to state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Uni*Quality, Inc. v. Infotronx,*

*Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (quoting *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992)) (internal quotations omitted).

The heightened pleading requirement of Federal Rule of Civil Procedure 9(b) therefore mandates that a complaint alleging fraud contain more substance in order to survive a motion to dismiss than a complaint based on another cause of action governed only by the minimal pleading standards of Rule 8(a)(2). *See Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999) (Rule 9(b) forces "the plaintiff to do more than the usual investigation before filing his complaint"); *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) (the rule serves three main purposes: (1) protecting a defendant's reputation from harm; (2) minimizing "strike suits" and "fishing expeditions;" and (3) providing notice of the claim of fraud to the defendants); *accord Iqbal*, 556 U.S. at 678 (a complaint must only state a plausible claim to relief to survive a motion to dismiss under Rule 8).

## DISCUSSION

### I.     The Motion for Remand

The Defendants removed this case, pursuant to 28 U.S.C. §§ 1332 and 1453, to this Court from the Circuit Court for the Twelfth Judicial Circuit, Will County, Illinois. The Class Action Fairness Act ("CAFA") allows a defendant to remove a class action brought in state court to a United States District Court provided that: (1) the putative class action consists of at least 100 putative class members; (2) the citizenship of at least one putative class member is different than that of any of the defendants; and (3) the amount in controversy exceeds $5 million exclusive of interest and costs. *See* 28 U.S.C.

§ 1332(d). Plaintiff's Motion for Remand challenges whether Defendants met these requirements and requests that the case be remanded to the Will County Circuit Court.[4]

Since the challenge to the Defendants' removal is a challenge to this Court's subject-matter jurisdiction, this Court must resolve this question before proceeding to the merits of any other motion. *See State of Illinois v. City of Chicago,* 137 F.3d 474, 478 (7th Cir. 1998) ("Subject-matter jurisdiction is the first question in every case, and if the court concludes that it lacks jurisdiction it must proceed no further.").

The party seeking removal "bears the burden of establishing the general requirements of CAFA jurisdiction." *Appert v. Morgan Stanley Dean Witter, Inc.,* 673 F.3d 609, 618 (7th Cir. 2012). Plaintiff does not dispute, and thus concedes, that the putative class action consists of at least 100 putative class members; however, he contests whether the Defendants have established diversity of citizenship and that the amount-in-controversy exceeds $5 million.

### A.     Diversity of Citizenship

With respect to diversity of citizenship, the Plaintiff is an Illinois resident. (Compl. at ¶ 12.) The putative class consists entirely of individuals who are Illinois residents who purchased FiveFingers in Illinois. (*Id.* at ¶ 58.) Plaintiff concedes that Defendant Vibram USA, Inc. is a Delaware corporation with its principal place of business in Concord, Massachusetts. Therefore, Vibram U.S.A, Inc. is a citizen of Delaware and Massachusetts for purposes of determining diversity. *See* 28 U.S.C. § 1332(c)(1) ("a corporation shall be deemed to be a citizen of every State and foreign state

---

[4] Plaintiff filed his original motion for remand on 10/3/2012. (Doc. 12.) In lieu of responding to Plaintiff's Motion, Defendants filed an Amended Notice of Removal. (Doc. 25.) Plaintiff then filed a Reply in support of Plaintiff's Motion to Remand (Doc. 30), which raises similar issues with respect to the Amended Notice as the original motion raised with respect to the original notice.

by which it has been incorporated and of the State or foreign state where it has its principal place of business"); *see also Wise v. Wachovia Sec., LLC,* 450 F.3d 265, 267 (7th Cir. 2006). Accordingly, diversity is established because the citizenship of one putative class member, *i.e.,* the Plaintiff being a citizen of Illinois, is different than that of one defendant, *i.e.,* Defendant Vibram USA being a citizen of Delaware and Massachusetts.

Plaintiff's argument to the contrary evidences a misunderstanding of the diversity requirement under the CAFA. Plaintiff contends that because the Defendants failed to disclose the citizenship of each member of Defendant Vibram FiveFingers, LLC diversity has not been conclusively established because one of those members could potentially be a citizen of Illinois.[5] However, total diversity of citizenship between potential class members and defendants is not required for removal under the CAFA. If it were, no nation-wide class action could ever be removed. Rather, under CAFA, parties must have minimal diversity. 28 U.S.C. § 1332(d)(2); *see also Travelers Property Casualty v. Good,* 689 F.3d 714, 726 (7th Cir. 2012) (noting that the CAFA "modified diversity jurisdiction rules so as to permit federal diversity jurisdiction where diversity is only minimal but the matter in controversy exceeds $5,000,000").[6] Accordingly, Defendants'

---

[5] In their reply brief in support of their motion to dismiss, Defendants state that no member of Vibram FiveFingers LLC is a citizen of Illinois.

[6] Neither party addressed the question of whether this Court should decline to exercise jurisdiction under the local controversy exception to the CAFA provided for in 28 U.S.C. § 1332(d)(4) because more than two-thirds of the proposed class are citizens of Illinois, the state where the action was filed. The Court finds that the local controversy exception is inapplicable because no defendant, including any member of Vibram FiveFingers LLC, is a citizen of Illinois. Even if they were, the local controversy exception would not apply because the Massachusetts and California actions are putative class actions, filed within the past three-years, which assert the same factual allegations against the Defendants as are asserted here. *See* 28 U.S.C. § 1332(d)(4)(A)(ii)

Notice sufficiently established diversity for purposes of removal because the citizenship of one defendant is different than that of a putative class member.

### B. Amount-In-Controversy

Plaintiff's other argument is that the amount-in-controversy is "unclear at best" so the Defendants' Notice falls short of establishing an amount-in-controversy in excess of $5 million. When evaluating whether a suit exceeds the amount-in-controversy threshold, courts consider all damages available to a plaintiff (including compensatory damages and punitive damages), as well as attorneys' fees. *See Oshana v. Coca-Cola Co.,* 472 F.3d 506, 512 (7th Cir. 2006) (evaluating the propriety of removal under CAFA and considering all of these elements in holding that a class action brought under the Act satisfied the $5 million threshold.). A defendant who removes a suit to federal court need not rely on the plaintiff's estimate of damages; the defendant "is entitled to present its own estimate of the stakes[.]" *Back Doctors Ltd. v. Metropolitan Property and Casualty Insurance Co.,* 637 F.3d 827, 830 (7th Cir. 2011). If this estimate is supported by proof, "the estimate of the dispute's stakes advanced by the proponent of federal jurisdiction controls unless a recovery that large is legally impossible." *Id.*; *see also Blomberg v. Serv. Corp. Int'l,* 639 F.3d 761, 763 (7th Cir. 2011) (holding that a good-faith estimate of the amount-in-controversy is acceptable provided that it is plausible and adequately supported by the evidence).

In support of its Amended Notice, Defendants submitted an affidavit from Christopher Allen, the Controller of Vibram USA, Inc. *See Meridian Sec. Ins. Co. v. Sadowski,* 441 F.3d 536, 541-42 (7th Cir. 2006) (holding that a proponent of federal jurisdiction may establish the amount-in-controversy through employee or expert

affidavits). In the affidavit, Mr. Allen describes that he reviewed Vibram's recent sales data between October 2010 through September 2012, to identify each sale of FiveFingers shoes to a consumer or retailer with an Illinois address. (Doc. 25, Ex. B.) Mr. Allen used the 2010-2012 sales data to identify: (1) the number of pairs of each type of FiveFingers shoes that were sold, by type of sale (consumer or retail), and by month; (2) the manufacturer's suggested retail price for each shoe, in a given month; and (3) the retail value of the wholesale sales to dealers, calculated on a monthly basis. (*Id.*) During this period, the retail price of a pair of FiveFingers shoes ranged from $80 to $135. (*Id.*)

From this, Mr. Allen calculated Vibram's total sales of FiveFingers shoes from October 2010 through September 2012. (*Id.*) Known sales made to consumers were calculated at known retail prices. (*Id.*) Sales made to retailers were calculated at wholesale prices. (*Id.*) Mr. Allen then calculated the retail value of the wholesales by multiplying the number of shoes sold wholesale in a given month by the manufacturer's recommended retail price in that given month. (*Id.*) From this, Mr. Allen extrapolated that Illinois consumers paid $5,873,499.75 in connection with Vibram's sales of FiveFingers between October 2010 and September 2012. This satisfies the $5 million amount-in-controversy amount.

However, Plaintiff contends that the figure Mr. Allen reached is speculative and, therefore, implausible. Plaintiff argues that because Mr. Allen relied on Vibram's wholesale sales data, he made the unsupportable assumption that every pair of Vibram FiveFingers shoes shipped to an Illinois retailer was subsequently sold to an Illinois resident. Plaintiff further contends that "[a]ny number of things could have happened to the shoes after they left Defendants' manufacturing facilities. For instance, they could

have been returned to the shipper, shipped to other stores, sold to discount outlets, stolen, donated or scrapped." (Doc. 30 at 4.)

These arguments notwithstanding, Defendant has sufficiently proven that the potential compensatory damages in this case meet the amount-in-controversy requirement. While it is likely that not every shoe sold by Vibram to Illinois retailers was eventually sold to an Illinois consumer, it is plausible that the vast majority of them were. Moreover, the $5,873,499.75 set forth by Mr. Allen only accounts for sales between October 2010 and September 2012. However, Vibram has sold shoes in Illinois since April 2006. Accordingly, four and a half years worth of sales are not accounted for in this figure. Thus it is plausible that the potential compensatory damages in this case are more than $5 million.

Moreover, the amount-in-controversy requirement is satisfied because Plaintiff will likely seek punitive damages in this matter. "If punitive damages are available, subject matter jurisdiction exists unless it is 'legally certain' that the plaintiff will be unable to recover the requisite jurisdictional amount." *LM Ins. Corp. v. Spaulding Enterprises, Inc.,* 533 F.3d 542, 551 (7th Cir. 2008) (internal citations omitted). While Plaintiff's Complaint does not specifically include a request for punitive damages, the prayer for relief seeks damages and "such other and further relief the Court deems just." Plaintiff also alleges that Defendants' knowingly and intentionally violated the Illinois Consumer Fraud Act ("ICFA"), which provides for punitive damages. 815 ILCS § 505/10(a). These combined factors strongly suggest that Plaintiff currently seeks or will amend his Complaint to expressly claim punitive damages.

As a result, the Court is entitled to consider potential punitive damages as part of the amount in controversy. *See Oshana,* 472 F.3d at 512 (taking punitive damages into account in determining amount in controversy because "although the complaint was silent about punitive damages, the [ICFA] permits recovery of punitive damages, and [plaintiff] could have amended her state court complaint to seek a punitive damages award."); *see also Warma v. NBTW, Inc.,* No. 9 C 144, 2009 WL 32300223, at *3 (S.D. Ill. Oct. 2, 2009) (same). Plaintiff has not established that it will be "legally certain" that he is unable to recover the requisite jurisdictional amount in punitive damages. Accordingly, Defendants have shown by a preponderance of the evidence that the amount in controversy in this case is more than $5 million. Therefore, this case was properly removed pursuant to the 28 U.S.C. § 1332 and the Plaintiff's motion for remand is denied.

## II.  The Motion to Dismiss

Plaintiff's Complaint alleges three separate claims for relief; (1) violations of the ICFA, 815 ILCS 505/2; (2) breach of warranty; and (3) unjust enrichment. In addition, the Plaintiff contends that his action satisfies the prerequisites for maintenance as a class action under 735 ILCS 5/2-801. Defendants move to dismiss each individual claim as well as the request for class certification.

### A.  The Complaint Adequately States a Claim under the Illinois Consumer Fraud Act

A violation of the ICFA, 815 ILCS 505/2, occurs when (1) there is a deceptive act or practice by the defendant; (2) the defendant intends that the plaintiff rely on the deception; (3) the deception occurs in the course of conduct involving trade or

commerce; (4) there is actual damage to the plaintiff; and (5) the deception caused the damages. *See De Bouse v. Bayer AG,* 235 Ill. 2d 544, 550 (2009); *Cozzi Iron & Metal, Inc. v. United States Office Equip.,* 250 F.3d 570, 575-76 (7th Cir. 2005). A complaint alleging a violation of the ICFA must be pleaded with the same particularity as common law fraud and must meet the heightened pleading standard of Rule 9(b). *See Davis v. G.N. Mortgage Corp.,* 396 F.3d 869, 883 (7th Cir. 2005) (consumer fraud claims must be pleaded with the same level of specificity as required by Rule 9(b)). As a result, Plaintiff must allege the "who, what, when, where, and how" of the alleged fraud. *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir. 1990).

Defendants contend that the Plaintiff fails to sufficiently allege the particularized facts necessary to support two of the elements of an ICFA claim - a deceptive act by the Defendants and that Defendants' conduct caused Plaintiff's purported injuries. Yet, Plaintiff alleges that Vibram made false statements to consumers regarding the health benefits that are conferred by wearing FiveFingers. Therefore, the "who" is Vibram. The "what" are the alleged false statements made by Vibram including its representations that Vibram FiveFingers: (1) improve foot health and reduces the risk of injury; (2) strengthen muscles in the feet and lower legs; (3) improve range of motion in ankles, feet and toes; (4) stimulate neural function; (5) eliminate heel lift to align the spine and improve the posture; and (6) allow the foot and body to move naturally. The Complaint alleges "how" these statements are allegedly false by citing evidence showing that there is no scientific support for the statements. For example, Plaintiff cites a medical journal article that states that "[t]o date, no clinical studies have been published to substantiate the claims of injury reduction using a 'minimalist' style" of running, such as what

Vibram promotes.  (Compl. at ¶ 50.)  The "where" is that these statements were made in in-store displays, on hangtags, on brochures and on Defendants' website.  The "when" is between is 2006 and the present.  However, the Complaint also cites specific dates for when these statements were made.  For example, Endnote 9 alleges that these statements were made on Vibram's website on August 7, 2012.  Accordingly, Plaintiff has alleged the who, what, when, where and how of Vibram's deceptive conduct with sufficient particularity.

Defendants contend that Plaintiff has not established that these statements are fraudulent; rather, that there is only a dispute in the scientific community regarding the potential health benefits that may be conferred by FiveFingers shoes.  This argument does not identify a pleading deficiency; rather, it raises a defense to the merits of Plaintiffs' claims.  At this stage of the litigation, the Court assumes the veracity of Plaintiff's allegations.  Therefore, Plaintiff has sufficiently alleged deceptive conduct to state a claim for a violation of the ICFA.

Plaintiff also alleges causation sufficiently.  The Illinois Supreme Court has held that, "in a cause of action for fraudulent misrepresentation brought under the Consumer Fraud Act, a plaintiff must prove that he or she was actually deceived by the misrepresentation in order to establish the element of proximate causation."  *Avery v. State Farm Mut. Auto. Ins. Co.,* 216 Ill. 2d 100 (2005) (internal citations omitted).

Here, Plaintiff alleges he viewed Defendants' statements on in-store displays at the Badlands FiveFingers Distributor in Naperville, Illinois in December 2011 and April 2012.[7]  He also alleges that he "lost money or property as a result of Defendants' conduct

---

[7] Plaintiff also alleges that he viewed Defendants' statements on its websites and through print advertisements.

because he purchased FiveFingers running shoes in reliance on Defendants' claims [], but did not receive a product containing [the] characteristics" described in Defendants' marketing materials. (*See* Compl. ¶ 69.) In other words, Plaintiff alleges that Vibram's misrepresentations regarding health benefits caused him to purchase shoes that were worth less than what he paid for them. These allegations are sufficient to allege causation under the ICFA.[8] Accordingly, Plaintiff has complied with both Rule 12(b)(6) and 9(b) in alleging his ICFA cause of action and Defendant's motion to dismiss this claim is denied.

### B. The Complaint Fails to State a Claim for Breach of Warranty

Defendants next contend that the breach of warranty claim should be dismissed because the Plaintiff failed to provide notice to Vibram of any alleged breach of warranty. In general, buyers must directly notify the seller of the troublesome nature of the transaction or be barred from recovering for a breach of warranty. *See Connick v. Suzuki Motor Co.,* 174 Ill. 2d 482, 492 (1996) (citing 810 ILCS 5/1-201(26)). There are instances, however, when a buyer can fulfill the notice requirement without giving direct notice to the seller. These instances include when: (1) the seller has actual knowledge of the claimed defect; or (2) the seller is deemed to have been reasonably notified by the filing of the buyer's complaint alleging breach of warranty. *See id.* Neither of these exceptions is present here.

---

[8] Illinois law allows a consumer who has been injured by fraud to recover under the ICFA for the loss of the benefit of their bargain. In other words, "plaintiffs may sue for the difference between the product's value if the misrepresentations had been true and the product's true value. *See, e.g., Lipton v. Chattem,* No. 11 C 2952, 2012 WL 1192083, at *4-5 (N.D. Ill. Apr. 10, 2012) (denying motion to dismiss for failure to allege loss causation under the ICFA where the plaintiff alleged that she would not have purchased a drug but for the misrepresentations regarding the drug's safety) (internal citations omitted).

Plaintiff contends that Defendants had actual notice of the alleged defects because nearly identical lawsuits were previously filed in Massachusetts and California. However, these lawsuits are insufficient to establish to actual notice in the breach of warranty context. The Illinois Supreme Court has held that "even if a manufacturer is aware of problems with a particular product line, the notice requirement of section 2-607 is satisfied only where the manufacturer is somehow apprised of the trouble with the particular product purchased by a particular buyer." *Id.* at 494 (internal citations omitted). Accordingly, notice would only be excused in this case if the Defendants had actual knowledge of defects with the particular pairs of shoes sold to the Plaintiff. There is no allegation in the Complaint that suggests they did. Accordingly, this claim is dismissed.

### C. The Complaint Adequately States a Claim for Unjust Enrichment

A claim of unjust enrichment alone is not sufficient to raise a cause of action to justify recovery, but rather it must rest upon some underlying fraudulent conduct or breach of fiduciary duty. *See Siegal v. Shell Oil Co.,* 612 F.3d 932, 937 (7th Cir. 2010); *see also Martis v. Grinnell Mut. Reinsurance Co.,* 388 Ill. App. 3d 1017 (Ct. App. 2009) (dismissal of unjust enrichment claim appropriate when no underlying violation of the ICFA). Defendants argue that because the ICFA claim fails, the unjust enrichment claim must fail as well. However, as described above, the ICFA claim does not fail. Accordingly, neither does the unjust enrichment claim. The motion to dismiss this claim is denied.

### D. It Is Premature to Rule on the Class Allegations

Finally, the Defendants argue that Plaintiff has failed to allege the prerequisites for class certification under Federal Rule of Civil Procedure 23(b)(3). Specifically, Defendants argue that the class allegations fail because the proposed class is overbroad and unascertainable, the claims lack commonality, and the individual Plaintiff's claims are not typical of those of the proposed class. The putative class consists of all Illinois consumers who purchased Vibram FiveFingers from authorized retailers located in Illinois or through Vibram's website for shipping to an Illinois address.

Federal Rule of Civil Procedure 23(c)(1)(A) directs district courts to wait until "an early practicable time" before ruling on a motion to certify a class. In making this ruling though, district courts are required to "engage in a 'rigorous analysis' – sometimes probing behind the pleadings – before ruling on certification." *Damasco v. Clearwire Corp.,* 662 F.3d 891, 897 (7th Cir. 2011) (*quoting Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011)).

While there may indeed be issues with the proposed class, the Court believes it is premature to engage in this analysis at the motion to dismiss stage. Rather, these issues are better raised after the parties have had an opportunity to conduct class discovery and fully brief the motion for class certification. *See, e.g., Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 677 (7th Cir. 2001) (highlighting the differing standard and factors considered for a Rule 23 motion as opposed to a Rule 12 motion); *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U.A.,* 657 F.2d 890, 895 (7th Cir. 1981) (stating that "some degree of discovery may be appropriate in certain cases to aid making the necessary class determinations [and that] [t]he pleadings are expected to be of

assistance, but more information may be needed"); *Worix v. MedAssets, Inc.,* 869 F. Supp. 2d 893, 901 (N.D. Ill. 2012) (denying motion to strike class allegations at the pleadings stage as the motion was premature); *Walker v. County of Cook,* No. 05 C 5634, 2006 WL 2161829, at *2 (N.D. Ill. July 28, 2006) (holding that issues regarding commonality and typicality required under Rule 23 were prematurely raised in a 12(b)(6) motion).  Indeed, the Seventh Circuit has warned that "a court may abuse its discretion by not allowing for appropriate discovery before deciding whether to certify a class." *Damasco,* 662 F.3d at 897.  Accordingly, the Court finds that it is premature to rule on the propriety of class certification at this time.

### III.     The Motion to Transfer

While the Plaintiff has adequately stated a claim for a violation of the ICFA against the Defendants and while this Court has jurisdiction to hear that claim, the United States District Court for the Northern District of Illinois is not the best venue for this action.  Rather, this case should be transferred to the United States District Court for the District of Massachusetts where the earlier filed *Bezdek v. Vibram USA Inc., et al.,* No. 12 C 10513 is pending.

The federal venue-transfer provision provides that "[f]or the convenience of parties and witnesses, and in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The decision to transfer venue under § 1404(a) requires a weighing of factors for and against transfer.  *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219 (7th Cir. 1986).  Several factors must be met for an action to be transferred to another venue: (1) venue is proper in the transferor district; (2) venue and jurisdiction are proper in the

transferee district; (3) the transferee district is more convenient for both the parties and witnesses; and (4) transfer would serve the interests of justice. *See Grossman v. Smart,* 73 F.3d 364 (7th Cir. 1995).

Venue is proper in this District, since it embraces the Circuit Court of Will County, where the action was originally filed. *See* 28 U.S.C. § 1441(a). Venue is also proper in the District of Massachusetts since that is where the Defendants reside. *See* 28 U.S.C. § 1391. The District of Massachusetts would also have subject-matter jurisdiction over the case on the basis of diversity. The only issue genuinely in dispute is whether transfer would serve the convenience of the parties and the interests of justice.

Making this determination requires consideration of relevant private interest factors such as: (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; and (4) convenience of the parties and witnesses. It also requires the consideration of public interest factors like: (1) the Court's familiarity with the applicable law; (2) the speed at which the case will proceed to trial; and (3) the desirability of resolving controversies in their locale. *See, e.g., Aldridge v. Forest River, Inc.,* 436 F. Supp. 2d 959, 960 (N.D. Ill. 2006). The "interests of justice pertains to the efficient administration of the court system, and is a distinct and separate component of a § 1404(a) analysis." *Simonia v. Pfizer, Inc.,* No. 10 C 1193, 2011 WL 2110005, at *2 (N.D. Ill. May 23, 2011).

Here, the interests of justice factor is determinative and requires transfer of this case to the United States District Court for the District of Massachusetts. *See Coffey,* 796 F. 2d at 220 (holding that a decision to transfer venue under § 1404(a) relies heavily on

consideration of the interests of justice, which "may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result.").[9]

In considering the interests of justice, the Court does not consider the merits of the underlying claim, but rather the public's interest in conserving scarce judicial resources by "efficient administration of the court system." *Id.* at 220-21. Indeed, "[Section] 1404(a) was designed to prevent the situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts." *Aland v. Kempthorne,* No. 07 C 4358, 2007 WL 4365340 at *5 (N.D. Ill. Dec. 11, 2007) (*quoting Continental Grain Co. v. FBL-585,* 364 U.S. 19, 26 (1960)). The District of Massachusetts is currently the venue of the Massachusetts Action, which is substantially similar to the instant case. The parties and claims in the Massachusetts and Illinois Actions are so similar that it would be wasteful and duplicative to have two different courts familiarize themselves with the controversy.

The named plaintiff in the Massachusetts Action purports to represent a nationwide class of persons who purchased Vibram FiveFingers shoes. The Plaintiff here purports to represent a subset of that class, namely Illinois consumers who purchased Vibram FiveFingers shoes. The Defendants are the same in both actions.

The claims made in both actions are also substantially similar. A court must consider the substance of a claim over the form when determining whether a claim is

---

[9] While the Northern District of Illinois was not the Plaintiff's first choice of forum, he wishes to pursue his action in the state of Illinois. The situs of material events all occurred in the state of Illinois, including in this District. Retaining the action in Illinois would be more convenient for the Plaintiff than the Defendants; however, since the primary Defendant is a large corporation, and not an individual like the Plaintiff, Defendants are in a much better position to bear the relative inconvenience than if Plaintiff were required to litigate in Defendants' home forum. Finally, while most of the records for the case are located in Massachusetts, they are likely to be stored electronically. Accordingly, they can be easily transported to Illinois (or anywhere else for that matter). However, these "convenience" factors do not outweigh the important judicial economy reasons that weigh heavily in favor of transfer.

duplicative. *See Serlin v. Arthur Andersen & Co.,* 3 F.3d 221, 223 (7th Cir. 1993); *see also Ridge Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.,* 572 F. Supp. 1210, 1214 (N.D. Ill. 1983); *Jaramillo v. DineEquity, Inc.,* 664 F. Supp. 2d 908, 916 (N.D. Ill. 2009) (stating that "[a] court must consider the substance of a claim over the form when determining that a claim is duplicative" in assessing whether transfer under § 1404 is appropriate).

The claims in the instant case allege violations of the ICFA as well as a breach of warranty claim. The claims in the Massachusetts action allege violations of the Massachusetts and Florida consumer fraud statutes. While the claims are based on different underlying law, they are substantially similar because they have the same underlying facts. *See, e.g., Sylverne v. Data Search N.Y., Inc.,* 2008 WL 4686136 at *2 (N.D. Ill. May 28, 2008) (granting leave to file a consolidated class action based on common, though not identical, facts showing a common question of law or fact). Specifically, the underlying issue is whether Defendants misrepresented the health benefits that could be obtained by wearing FiveFingers in their marketing of FiveFingers. Indeed, it appears that a large portion of Plaintiff's Complaint is copied directly from the complaint filed in the Massachusetts Action. (*Compare* Compl. *with* Doc. 25, Ex. A.)

Moreover, the underlying law is similar. The section of the ICFA and the sections of the Massachusetts and Florida consumer fraud statutes at issue prohibit the same conduct. *Compare* 815 ILCS 505/2 (prohibiting "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact") *with* Mass. Gen. Laws ch.

266 § 91 (prohibiting "untrue, deceptive or misleading" statements of fact in "an advertisement of any sort regarding merchandise, securities, service or anything so offered to the public" ) and Fla. Stat. § 501.202 (prohibiting "unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce).

Allowing discovery and motion practice on these issues to proceed in two different district courts would result in duplicative document productions, depositions, and briefing. The inefficiency of having two district courts decide discovery disputes could be compounded if either party decides to appeal a decision because two different circuit courts would be required to decide the same issues for the same parties. To allow these parallel cases to proceed in two different district courts would undermine the public's interest in judicial economy. Therefore, the Court will transfer this action to the District of Massachusetts in the interest of saving judicial resources.[10]

## CONCLUSION

For the reasons set forth above, the Plaintiff's Motion to Remand is denied. Defendant's Motion to Dismiss is denied, in part, and granted in part. Defendant's Motion for Transfer is granted. Venue for this case shall be transferred to the United States District Court for the District of Massachusetts.

---

[10] The other two factors cited by the Seventh Circuit in determining the "interests of justice" do not strongly weigh in favor of or against transfer. Given that the Massachusetts Action was filed before the instant action, that case will likely proceed to trial sooner than the instant case. However, this Court handles its docket efficiently so this case would proceed expeditiously if it were to remain here. The applicable law in this case is Illinois statutory and common law. The Northern District of Illinois is undoubtedly more familiar with the application of Illinois law, but federal courts have experience applying the law of foreign states. *See, e.g., Miller v. SKF USA, Inc.,* No. 10 C 6191, 2010 WL 5463809, at * (N.D. Ill. Dec. 29, 2010) (stating that "[f]ederal courts are accustomed to applying the laws of other states.") (internal citations omitted). As a result, this factor does not so heavily weigh against transfer as to override the important judicial economy reasons that weigh in favor of transfer.

Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: March 18, 2013